We'll now hear argument in our next case, Projects Management Company v. DynCorp International. Mr. Kenworthy. Good morning, Your Honor. May it please the Court. My name is Tom Kenworthy, and I represent the appellant, Projects Management Company. We believe that the issues raised by this appeal are well set forth in our briefs, but we welcome the opportunity to present an oral argument and respond to any questions the Court may have. I'd like to focus my argument on three issues. One is the entry of partial summary judgment that the parties intended to modify the bank wiring provisions of the subcontracted issue. The second is the dismissal of the case based on what the district court found to be a nonviable damage theory and who has the burden of proof with respect to reducing certain claims of damages. And finally, the imposition of the sanction of dismissal, whether there was any sanctionable conduct and whether under any circumstance it would rise to the level of egregiousness for which there can be an appropriate dismissal on the merits. You may want to take those in reverse order because I think if you fail to prevail on the latter two, we wouldn't reach the first one. Okay. I'd be happy to do that, and I agree that that is the case. So with the Court's permission, I'll start with the damages theory, which would be the first ground for the dismissal, unless you'd rather have me start with the sanctions. Yeah. With regard to the sanctions, just very briefly, what was left of the case at the point sanctions were imposed? The sanctions were imposed the first day of trial, so everything was left in the case other than whether there was an agreement, but whether or not there was authority on the representative of PMC was still an issue. So all issues were still in the case except for whether or not there had been an agreement of representatives. Okay. What was the effect of the damages ruling? The damages ruling, they were done at the same time. They both were independent grounds for dismissing the case altogether. I guess that's what I'm trying to ask you. Their holding is in the alternative. They're in the alternative. They're in the alternative. Yes, Your Honor. Okay. So if we sustain either one, the case is over. If we affirm either one. Yes. Okay. I just needed that clarification. Yes. They were independent grounds. If I'm remembering correctly, there was a bifurcation of damages, and there was a small segment that the parties agreed were still at issue, and the parties settled that. It wasn't so much a bifurcation of damages. The central claim— I'm speaking loosely. Yes, but the central claim related to the improper wiring of funds to the private account. That's big money. And the other one, they never paid at all. The one they never paid at all was not dismissed, and it was settled. So they got rid of everything. Why don't you tell us why the trial judge here incorrectly chose to dismiss the case on the basis of sanctionable conduct? Okay. The motion for sanctions was based on two grounds. It was based on claimed false testimony, and it was based on a failure to produce documents claimed to be required by the document request in case. First, with respect to the purported false testimony, the only thing that got down to it, that DynCorp claim, was that Ms. Almohanna testified that she had no idea whether or how PMC's employees were paid in the last five months of the subcontract. Judge Ellis, I believe, was acting here under his inherent authority and not under the rule. That's correct. Solely under inherent authority. That's all they requested and all he moved on. The district court accepted that statement verbatim and found that she did so testify that she had no idea. That's clearly erroneous because the testimony doesn't say that anywhere. There's no support for it in the record, and the site, they even quote everything. At most said that she didn't remember. There's absolutely no testimony by her ever that she didn't know, so that documents showing that she was told that there had been some payments for which they sought reimbursement proved to be a lie. She never, ever testified that she didn't know. So that ground, which was a principal ground of the decision, is not supported by any evidence, let alone substantial evidence. The only statement is at some stage she says, I don't remember and it was events that happened three years before. So that ground is clearly erroneous. Only the second ground related to the production of certain documents. These documents were emails that related to the fact that payments had been made by Mr. Fawaz and he wanted reimbursement. Now, DynCorp's theory was that all of this payment to Mr. Fawaz's account was with the knowledge and consent of the principals and that they were actually operating their business out of his account. These documents actually show just the opposite because they showed that to the extent that any payments were made by Mr. Fawaz for his convenience, he was looking to get the money back from the Almohannis who were responsible for paying. So those documents really would have been produced to be helpful, but significantly none of those documents. Well, are you saying that the payments that were made out of this Lebanese account did not pay the legitimate debts of PMC? What we're saying, Your Honor, is we do know that there were payments that were made to people who are employees and to entities that are subcontractors. What we don't know, because Mr. Fawaz took the computers, took the records, and because he had the monies that DynCorp sent, they never got to the financial people who were responsible to pay properly. They never had the documents that would have shown whether or not these people were entitled to it. Secondly, the evidence is that— I thought you all finally admitted the very last day that a million and a half dollars you were claiming from CaterCorp, you agreed that these Lebanese accounts paid them that money. It wasn't the last day. We told them they had that evidence from the very first discovery produced in February. So it wasn't the last day that they learned that. They knew about that from the very beginning. We'd given them the copies of the bank statements that showed that in February, not in August. And we certainly—I, when asked, conceded it, but that wasn't the first time that that came as a matter of record. And there was never— Isn't that a million and a half part of the seven million you're trying to claim from them? The million and a half is— Either it is or it isn't. It is money that was paid to them. Whether or not they were entitled to it is a substantial question because DynCorp brought a suit for $5 million in Kuwait. That suit was proceeded on to get all the monies they claimed were due in owing. All right, let's go back to my question. Of the $7 million that you say DynCorp owes you, does that include the million and a half that Catercorp claims? I'm not sure I can answer it specifically because we're owed money from them not to—for what they owed us. Now, we had a lawsuit initially for $5 million. We admit that they reduced their lawsuit by the amount of money they got. We never disputed that. That, as well, was told to them in depositions in March. The lawsuit they filed for the remaining $3.5 million was dismissed. They got nothing. And if it had still been $5 million, they still would have gotten nothing, and we would have had that million and a half. Your representation to us is that the $7 million ad dominum that you are claiming does not include the $1.5 million that you would have owed to Catercorp. The payment was made by Mr. Fawaz. It wasn't paid by PMC. PMC is entitled to get all the monies in its hand and then make judgments based— $7 million include the million and a half to Catercorp. The $7 million is based on what they owed us. They didn't pay Catercorp. They gave it to Mr. Fawaz. Mr. Fawaz paid money to Catercorp. Whether it was in respect of our invoices, we don't know. Whether it was in respect of money that they were entitled to, when they're not entitled to get any money from us until first PMC has been paid, it's what's of record. So we are not in a position to say that that paid an obligation. As I say, the Kuwait court said all of Catercorp's claims were dismissed. We would have had the million and a half, and we would have had it in our hand and wouldn't have had to pay Catercorp anything. Now, if we're dealing with moving into the damages realm, the issue there on damages is a function of we're entitled to get what we would have gotten had the contract been performed. Had the contract been performed, we would have gotten all of the $5.7 million. Now, there are certain things the law says they are to be deducted, and it's our obligation. One of those is whatever performance we received from DynCorp. PMC received no performance from DynCorp. The other of which is we have to reduce our claim by the value of any performance of the contract that we've been relieved of by the breach. We fully performed the contract. There's no debate about the fact that the contract was fully performed. Every other case that deals with reduction of damages, including all the cases they cite, have said that that's an issue that's a defense, and including the case that they were concerned about of double recovery, the Nizon versus Wells Fargo case that was a double recovery case, which, Your Honor, Judge Agee authored that opinion when you were Justice of the Virginia Supreme Court. That was a case that shows that's a defense, and it has to be proven by the defendant. We were disadvantaged because they paid . . . What about the Virginia Supreme Court's holding in Sunrise Continuing Care? Sunrise Continuing Care was the difference between the value of what you were contracted to get and the value of what you did get. They got a substantial continuing care but wanted the whole money back. We got nothing from DynCorp. Zero. No performance on these whatsoever. They gave it to Mr. Fawaz. What Mr. Fawaz, who's now in Lebanon, did with it, we don't have the ability to get control of that. We don't have the documents. And all of that is because of the breach of where they were supposed to send the money. So Sunrise Continuing Care provides no support for them whatsoever because they provided . . . That's the difference between what you contracted for and what you got. We got nothing from them. With respect to the other issue relating to sanctions, the documents that we're dealing with, as I say, not only are they not responsive, they aren't responsive to any of the requests. They serve requests, two sets of requests. We timely responded with objections and responses in the 15 days you're required to in the Eastern District. They never moved to compel anything. And they haven't . . . One request that Judge Ellis says it was responsive to related to payments made by them to us. These documents related to payments that may have been made to subcontractors. And even if every one of the subcontractors, every payment made to a third party was deemed to be for our benefit, and even if we had the burden, it still would have left over a million dollars left and would not be a basis to throw out everything. And we never had any opportunity to present that whatsoever. The other issues, if I see my time's running out very quickly, with respect to sanctions and the prejudice . . . Let me ask you about a particular discovery request, interrogatory number 12, which Judge Ellis seemed to be particularly upset about. And I think your argument was that wasn't the focus of the motion for sanctions to begin with, but it became the focus at some point. And it seems like that interrogatory request required a specific response, and the response is at least misleading, if not simply untrue, given the cache of documents that you produced later on. Well, the first thing, it wasn't not only a focus, it wasn't even a ground of the motion. So at a hearing, and we're now dealing with everything happening right before trial, at a hearing, it's presented as a ground. So we never had an opportunity to present declarations, to address it, to show why all of the things that they claimed, like a spreadsheet that they said they never had, we showed that they'd gotten it in February. The spreadsheets, all of these documents relating to payments, all of them are secondary emails. The core document, the bank statements itself, they'd had since February. And they'd made no efforts with respect to them. If we'd had the time, we could have addressed that. But the specific question about the answer related to it didn't ask what payments were made out of the account. As I say, we'd given them all the information we had on that anyway. It said, in satisfaction of PMC's obligations, and because they qualified the interrogatory, and we explained this as we could on the fly because it came up on the fly, we didn't have an opportunity to get declarations in support. But because it was qualified by the issue of to satisfy the obligations of PMC and the testimony was very clear, employees and subcontractors didn't get paid until PMC received the money from the contractor. And that money wasn't received. The documents weren't received. So the answer was to that interrogatory, PMC didn't get any money from DynCorp. No question that it's true. And PMC is not aware of the extent, if any, that monies paid from that account were in satisfaction. And they limited their interrogatory to that, and that was the basis for that answer. And they were then, they had all the documents. Sanction was opposed about requiring witnesses to come on very short notice. They had the opportunity, they had all the documents, the opportunity to depose them. And the source documents, the critical source, they'd had for months and hadn't used them. This is by no means, in our view, respectfully, an egregious case that would warrant dismissal. And there were substantial sanctions imposed, including requiring a witness who was not an officer, director, or managing agent, who we didn't even have control to come from Moscow, and he did appear. And they asked him a half an hour of questions, which is the same thing they'd asked in March. Thank you, Mr. Kenworthy. You've got some time left on rebuttal. Mr. Cogle, do I have that right? Cagle, Your Honor. Cagle, sorry. May it please the Court, I'm Bill Cagle, and together with John O'Connor represent DynCorp in this action. Judge Agee, you had asked a question that I'd like to respond to at the outset. Your question addressed when and whether PMC had given DynCorp any credit for a payment that had been made by the managing director, Hussein Fawaz, from the Lebanon account to Catercorp. And the first time that that came up, and this is reflected on page 1555 of the joint appendix, was two days before trial was to start. On August 13th, Mr. Kenworthy wrote to us and said, for your information, while we are not agreeing that these payments were in satisfaction of obligations of PMC, we are willing to deduct from our damage claim, one, Fawaz's purported payments to Catercorp. That represented the first instance in which PMC had acknowledged that it was going to reduce its damage claim by amounts paid from the Lebanon account to its principal subcontractor, Catercorp. What page was that? I'm sorry, counsel. 1555, Your Honor. And it was relatively difficult, if not impossible, for PMC to avoid that result because when Catercorp sued PMC for monies that PMC allegedly owed Catercorp, PMC affirmatively credited, pardon me, Catercorp affirmatively credited PMC with the payment that had been made from the Lebanon account to Catercorp by Mr. Fawaz. But the damages theory that PMC employed in the case from the very beginning up until the day of trial is one that's not available as a matter of law, which Judge Ellis correctly found. Both federal common law and Virginia law are crystal clear in indicating a plaintiff bears the burden of proving not only the value received but of the costs or expenses avoided. PMC failed completely to even attempt to satisfy that obligation. It performed no calculations that were presented during the case as to the benefits that PMC had received from the payments made by its managing director out of the Lebanon account. Under Virginia law, is that part of their prima facie case? It is, Your Honor. Sunrise Continuing Care is crystal clear in that regard, that failure to carry that burden of proof constitutes a failure to set forth a prima facie case. And that led the Virginia Supreme Court to conclude that the Fairfax County Circuit Court had committed reversible error in failing to strike the plaintiff's damages claim. And the Virginia Supreme Court directed entry of judgment for the defendant as a result. It's effectively the same thing Judge Ellis did here. And it was all the more egregious because the evidence that was withheld, that was concealed in this case, went directly to that issue. The documents that PMC produced only after discovery had closed and only after we had obtained an inkling that there had been rather pervasive misconduct here demonstrated in considerable detail that while PMC went through the entire lawsuit claiming, we didn't know what our managing director was doing. We didn't know that payments were going to the Lebanon account, and we didn't know that he was using the Lebanon account to administer the subcontract. The documents that came out demonstrated, and we have a very lengthy citation to pages in the joint appendix reflecting this, that while this contract was being performed, PMC's financial manager, one of the owners, knew that Fawaz was making payments out of the Lebanon account to PMC's subcontractors. These documents demonstrated that while this contract was being performed, PMC's owners knew Fawaz was using the Lebanon account to pay PMC's employees. In fact, the record indicates that DynCorp paid hundreds of PMC's invoices for more than a year. With no objection, complaint, or quarrel whatsoever, it was only long after this contract had concluded, and there had been a parting of the ways between PMC's owners and PMC's managing director, Hussein Fawaz, that PMC filed this action against DynCorp. Whether the court relies upon federal law or on Virginia law, the result is the same. PMC had no cognizable theory of damages. It made no attempt whatsoever to sustain the burden of proof imposed by both federal and Virginia law with respect to damages. And Judge Ellis was clearly correct in granting a motion in limine to strike those damages. There was no cognizable damage claim that could go to a jury. What about the suggestion that even if that's the case, that you at least had some inkling of the existence of this account and the possibility that there might be some funneling of funds to pay these contractors and you had an obligation to try to ferret it out by moving to compel? A plaintiff is master of its complaint. And what Mr. Kenworthy has suggested is that at some point we should have gone to the district court and said, we believe that PMC is employing a flawed damages theory. And the court should rule now they can't do that and require them to use the damages theory cognizable as a matter of law. Quite simply, Judge Diaz, that's not a defendant's responsibility. PMC made a very conscious decision that it was going to seek recovery of all amounts that DynCorp had already paid to PMC to the Lebanon account, $6 to $7 million. And until August 13th, give DynCorp no credit for any of those payments. PMC knew what that money had been used for. They withheld that evidence. Interrogatory number 12 was the starting point for sanctions. We asked PMC what monies were paid out of the Lebanon account to satisfy PMC's obligations on this subcontract. And their answer was, we're not aware of any payments. That was demonstrably false because the evidence that was produced well after discovery closed demonstrated that Mr. Fawaz had provided an accounting to PMC's owners in Kuwait, delineating all the payments received from DynCorp, where each payment had gone to the Kuwait account or the Lebanese account, all the payments to subcontractors and all the payments to employees. PMC lied about that knowledge. They took the position throughout the case from day one that their managing director was operating as a total rogue and that PMC's owners in Kuwait had no idea, no clue, no information about what he had been doing. That was a big lie because the documents that came out after discovery had closed demonstrated that they knew full well what their managing director was doing, which explains how it is that DynCorp could pay hundreds of invoices totaling $6 to $7 million for more than a year without complaint by PMC's owners in Kuwait. The sanctions were also indicative of PMC's defalcation with respect to the issue of authority because PMC had consistently maintained that its managing director had no authority to modify the payment directions for this contract so as to direct payments to the account in Lebanon. And consistent with that theory, PMC said, we didn't know. PMC's owners said, we didn't know. That's what was going on. We had moved for summary judgment on the issues of actual and apparent authority, and that motion was denied. Judge Ellis concluding that there were disputed issues of material fact. Of course, what we did not know when we submitted that motion was we didn't have all the evidence reflecting that PMC's owners did in fact know, on a contemporaneous basis while the contract was being performed, that its managing director, Hussein Fawaz, was making payments out of the Lebanon account to PMC's subcontractors and its employees. That evidence could not have been more probative with respect to the issue of authority, which prompted Judge Ellis, in his decision dismissing the case, to indicate that that evidence showed that Hussein Fawaz had implied actual authority. You never renewed that motion as the case proceeded? Well, Your Honor, we... No, I just want to clarify. I don't mean to suggest you should have. That is correct because we had moved, that motion was denied. We were preparing for trial when we received an inkling that PMC had been less than forthcoming in its document production and perjurious in its testimony. We pursued that by indicating to Mr. Kenworthy that we had received information reflecting this and asking him to produce responsive documents. We received two productions, more than 3,000 pages of documents. We then submitted a motion for sanctions. Judge Ellis initially denied that, ruling that, well, PMC was going to need to bring back its Rule 30b-6 representatives to testify about the documents that the court had concluded were improperly withheld. That proved to be a challenge. PMC's Rule 30b-6 representatives initially simply failed to appear, as directed by Judge Ellis. We had to go back to court and ask the court for further relief. At that point, Judge Ellis indicated they will appear on Monday, August 13th. That was two days before trial was to start. He issued some other sanctions as well. Once we had the benefit of those depositions, we submitted a supplemental memorandum the evening of August 13th, recounting for the court what we had learned once we had had an opportunity to review these documents and what the PMC representatives had to say. This is when you re-deposed Ms. Rabia Al-Muhanna and Philip Zachariah. That was the guy in Moscow. That is correct. They appeared on the 13th. Trial was scheduled to begin on the 15th. In the morning the trial was scheduled to start, Judge Ellis informed us and issued a rather lengthy oral statement from the bench that he was going to dismiss the case for PMC's failure to deploy a cognizable damages theory and based upon PMC's serial discovery misconduct. We think both of those rulings are amply supported by a compelling record. They provide independent separate grounds to affirm the district court and we urge this panel to do so. You heard Mr. Kenworthy say that with respect to Ms. Al-Muhanna's testimony, it was simply a failure to recollect as opposed to an intent to deceive. What's your take? She was testifying as a 30B6 witness, so I think recollection or not, if the company has knowledge, she has an obligation to try to ferret it out, but give me your take on that. We quoted her testimony at length in our brief precisely because of this, Your Honor, because we believe that Judge Ellis reached the only reasonable conclusion. She lied, that we tried to ask her. Can you give us the page? This question and answer appears beginning on page 14 of our brief, Judge Agee. Ms. Muhanna had been questioned about the payments that she had been making to PMC's employees in Iraq up until July of 2009, and this contract concluded until December 2009. She, from PMC's office in Kuwait, had ceased making any payments to PMC's employees in Iraq from that point forward. I was asking her because she had taken the position that she had no idea. PMC took the position it had no idea what Hussein Fawaz was doing, that it didn't know Fawaz had directed payments to the Lebanon account, that it didn't know Fawaz was paying PMC's subcontractors and employees out of the Lebanon account. At this point in time, I didn't have the documents that would disprove that. So I was asking her, how is it, if you were in charge of paying PMC's employees, that PMC continued to perform this contract, but nobody was getting paid? This is the colloquy that occurred on that subject. We believe that district court was clearly correct in concluding this was knowingly false testimony, because the subsequent evidence that came out demonstrated beyond any doubt that she had contemporaneous knowledge during this time period that Hussein Fawaz was using the Lebanon account to pay PMC's employees and subcontractors. She knew that because Hussein Fawaz wrote to her and asked her to arrange for PMC in Kuwait to reimburse him for those expenses. On this basis, we don't think reasonable minds can disagree that this was simply false testimony on behalf of PMC's 30B6 representative. This misconduct clearly prejudiced DynCorp. While PMC, on the one hand, says it was DynCorp's burden to demonstrate any benefits that PMC received from payments to the Lebanon account, they withheld that evidence. They withheld that evidence. And they were wrong on the law. They were wrong on the law to begin with. It was not our burden. It was PMC's burden. And PMC presented absolutely no calculations to us during discovery that reflected any benefits received from DynCorp's payments to the Lebanon account and payments by Fawaz to PMC's subcontractors and employees. Whether the court relies upon federal law or on Sunrise Continuing Care, the result is clear. PMC fails to state a prima facie case, and dismissal was required. Unless the court has further questions, we'll rest on our briefs. Do you regard the grant of the motion in Limine as the damages a sanction, or is that just a proper legal ruling? No, that is a proper legal ruling. We've cited a number of cases, Judge Davis, that makes it appropriate for a court to strike damages if . . . Did Judge Ellis think it was a sanction or . . . doesn't matter? No, not . . . we don't believe he treated the motion in Limine as a sanction. Because we had moved in Limine as to damages separate and apart from our sanctions motion. He granted a motion to dismiss on two separate grounds, ruling on the alternative. One was on the motion in Limine, and the other was for sanctions. That's correct, Judge Agee. Thank you. All right, thank you, Mr. Cagle. Mr. Kenworthy, you've got some time on rebuttal. This is always difficult to deal with in an oral argument, because the representations of the record simply aren't true.  They represented in their briefs below, and Judge Ellis found that Ms. Almohanna testified that she didn't know how the employees were being paid. That's the representation she made, and that's exactly what Judge Ellis found. They gave you the pages where they give that testimony, and there's not one thing in there that supports that statement. That most she says she didn't remember, but she stopped paying them. She never, ever said she didn't know, ever. At a minimum, she wasn't responsible. I mean, she kept insisting that because she wasn't getting paid, no one else should be getting paid. Well, that was her theory about the obligation. But the theory about whether she knew that, as Mr. Cagle would say, that she remembered that she knew, she said she didn't remember. Well, how did you understand or what understanding did you have for how those people were getting paid after July of 2009? That's the question at page 14 of the brief. Instead of answering that question, she keeps insisting that my contract is clear. I don't need to pay anybody until I get paid. That was her response. Well, maybe it's not responsive, and she's not sophisticated. English is a second language. It wasn't on, well, we've had that issue on both sides. If she wasn't adequately prepared, the proper thing is to move to require. We had a motion to preclude them from presenting any evidence because their witness weren't. They didn't ever file any motion to require her to be repaired, to ask for a new witness if she didn't have it. I'm not even sure that was a deposition topic. But it is not a lie. The sanction was bait on what they claim is perjury and fraud on the court that she lied to the court. She didn't. She may at most have been not responsive. They continued the question. They didn't even follow up with what if she hadn't answered it because she was going on. She ultimately said she didn't remember. Well, could the district court have legitimately inferred that her answers were false because of the other documentary evidence of what had been sent to her from Mr. Fawaz and others about the payment of the bills? Well, two things. One, he didn't do that. Secondly, what he found was what they said she said. He didn't find that her statement was that she didn't remember was false. They said she said what she didn't say, and he found exactly what they said. He didn't find any inference. Now, all this statement about the fact that they knew what was happening, there's not one piece of evidence, of contemporaneous evidence, that the principals knew that these monies were being sent to Mr. Fawaz's account. Not one. How could they not know that? How could they not know that? How could they not know that for a year? They were getting payments. The payments weren't coming to them. And they're asking Mr. Fawaz, why aren't we getting paid? Mr. Fawaz told them that your principal contractor, DynCorp, is being paid directly, and we'll get our piece at the end. That's what he told them all along. The documentation, though, that shows that Fawaz was sending information indicating all of these creditors of PMC, and that went to the heads of the PMC Corporation contemporaneously. About them not being – no, that wasn't – they weren't being getting contemporaneous documentation that they weren't being paid. Not that they were being. They were paying the subcontractors and the employees of PMC. No, there's no question but that. But that is the antithesis of them operating this thing out of Mr. Fawaz's account, because Mr. Fawaz said, I've paid them, but you're going to have to pay me. So if supposedly the money – You're saying that that was a gift? If their theory were correct, that because they were getting the money from DynCorp, it was being used to pay it, Mr. Fawaz took the money, and to the extent that he made payments, he then came to us and said, you've got to pay me back. So the last thing that is going to suggest is that he actually had the money that he'd gotten from DynCorp. If they had the money from DynCorp and he's paying their – why would he be looking for reimbursement? But there's no evidence – there's no dispute with respect to the fact that they can argue what they want about what that shows of the knowledge. That wasn't the basis for any sanctions whatsoever. Judge Davis, you asked Mr. Cagle if they renewed the motion for summary judgment when they got the documents. Mr. Cagle said he didn't. They did. The same motion filed on July 27th was first a renewed motion for summary judgment, a reconsideration, and then sanctions. They were all part of the same thing. Judge Ellis denied it because he felt that this evidence, all of this evidence, still didn't show that there was authority. Didn't show it as a matter of law. Didn't show it as a matter of law. It said it's evidence that can be presented. What's your final word on the damages question? My final word on the damages question, and I welcome when the court looks, no case, and Virginia law clearly governs. Federal law does not apply. The only thing under the choice of law provision is for contract interpretation, and Judge Ellis specifically said it's a narrow choice of law, and he applied under Claxton v. Stenter, Virginia law. Virginia law does not require a party who's seeking to recover from the breaching party to set off amounts that some third party may have paid for its benefit, which it doesn't have control to prove. So you continue to disagree? Absolutely. And, Sun Ra, every case, there's not one case that says other than you have to deduct the value of what you received from the breaching party, and we've cited all the secondary authorities as well that support this. It's not what some third party gives you, and you have to show the difference between the benefit of what you got and what you received. We didn't get any benefit, and Sun Ra's doesn't apply. And the other relates to what you've been relieved of doing, of performing under the contract, not with respect to what you have been relieved to do outside of the contract. And virtually every analogous, whether it's failure to mitigate damages, set off, payment, collateral source, every one of these are defenses that the defendant has to prove. Now, the other aspect with respect to what they knew or had inkling, these payments, the bank statements, the documents they keep talking about are spreadsheets. They had one of these spreadsheets in February, which is part of the problem because they didn't raise that issue as part of their motion to dismiss. We never got to fully brief it. They were doing it on the fly. They added briefs that they weren't authorized and got leave to do. They didn't file a renewed motion. There wasn't an order to show cause with respect to those additional documents. But the documents, the spreadsheets they claim, they had the identical thing they got back in February, but more importantly, they're only secondary evidence of somebody, Mr. Fawaz, spinning it, saying what the bank statements that they had directly showed, which Mr. Cagle, at the very first motion to dismiss, raised that question. Thank you very much, Mr. Kenworthy. We will come down and greet counsel and move to our last case.
judges: G. Steven Agee, Andre M. Davis, Albert Diaz